**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AUBURN UNIVERSITY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:09cv694-WHA |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | § § § § | |
| Defendant. | § § | |

**MEMORANDUM IN SUPPORT OF IBM'S MOTION TO DISMISS THE STATE LAW CLAIMS (COUNTS III AND IV) IN PLAINTIFF'S COMPLAINT**

International Business Machines Corporation ("IBM") submits this Memorandum in Support of its Motion to Dismiss Counts III and IV in Auburn University's ("Auburn's") Complaint for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).

**I.     INTRODUCTION**

Auburn's Complaint against IBM includes four counts. Counts I and II are straightforward patent infringement counts under the federal patent laws, with Auburn alleging that IBM has infringed two patents assigned to Auburn (U.S. Patent Nos. 7,194,366 and 7,409,306). IBM does not infringe either of these two Auburn patents and IBM has denied Auburn's infringement allegations in its concurrently-filed Answer And Counterclaims.

The other two counts of Auburn's Complaint allege state law claims for unjust enrichment (Count III) and conversion (Count IV). Auburn's state law counts allege that IBM appropriated Auburn's technology and wrongfully obtained two patents on that technology, U.S. Patent Nos. 6,789,032 and 7,139,944. Auburn's Complaint includes false and inflammatory

1

allegations that IBM "stole" technology from Auburn, and as a remedy Auburn seeks an assignment of these two patents from IBM to Auburn. In addition to being substantively meritless, the state law claims pleaded by Auburn are fatally defective on numerous grounds and these claims should be dismissed as a matter of law.

Auburn's unjust enrichment claim (Count III) fails for two independent reasons:

- the claim is time-barred by the statute of limitations; and
- it is preempted by federal patent law.

Auburn's conversion claim (Count IV) likewise fails for three independent reasons:

- the conversion claim, too, is preempted by federal patent law;
- the applicable state law does not recognize a claim for conversion of a patent; and
- Auburn has not pled – and cannot plead – a necessary element of a conversion claim, *i.e.*, that Auburn has an immediate right to possession of IBM's patents.

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) requires courts to dismiss a cause of action if, as a matter of law, a plaintiff has failed to state a claim for which relief may be granted. In ruling on a motion to dismiss, a court accepts a complaint's allegations as true and construes them in the light most favorable to the plaintiff.[1] In order to survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[2] Under this standard, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[3] It is not sufficient that the pleadings merely leave "open the possibility

---

[1] *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[3] *Id*. at 555.

2

that a plaintiff might later establish some set of [undisclosed] facts to support recovery."[4]  "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[5]

### III.  ARGUMENT

The Court should dismiss Count III (unjust enrichment) and Count IV (conversion) of Auburn's Complaint under Fed. R. Civ. P. 12(b)(6).

#### A.  Auburn's Unjust Enrichment Claim (Count III) Is Barred By The Statute of Limitations.

Section 6-2-38(l) of the Alabama Code (1975) applies a two-year statute of limitations to "[a]ll actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section."  This two-year statute of limitations applies to claims for unjust enrichment in Alabama,[6] like Auburn's claim against IBM here.[7]

Auburn's unjust enrichment claim is that IBM unjustly benefited by wrongfully obtaining U.S. Patent Nos. 6,789,032 ("the '032 patent") and 7,139,944 ("the '944 patent").[8]  Specifically,

---

[4] *Id.* at 561 (quotations omitted).

[5] *Id*. at 555 (quotations omitted).  *See also Jackson v. BellSouth Telecommunications,* 372 F.3d 1250, 1262-63 (11th Cir. 2004) ("Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.") (quotations omitted).

[6] *See Birmingham Hockey Club, Inc. v. Nat'l Council on Compensation Ins., Inc*., 827 So.2d 73, 80-81 (Ala. 2002) (affirming trial court's dismissal of unjust enrichment claim as barred by two-year statute of limitations, where applicability of the statute had not been contested below); *Johnston-Tombigbee Furniture Mfg. Co. v. Berry*, 937 So.2d 1047, 1050-51 (Ala. Civ. App. 2006).  *See also Saxton v. ACF Indus., Inc.*, 239 F.3d 1209, 1212 (11th Cir. 2001) ("Under Alabama law, the statute of limitations for general tort claims is two years.") (citing ALA. CODE § 6-2-38), *rev'd on other grounds en banc*, 254 F.3d 959 (11th Cir. 2001).

[7] Alabama courts consider statutes of limitations to be procedural law.  *See Randolph v. Tenn. Valley Auth*., 792 F. Supp. 1221, 1222 (N.D. Ala. 1992) ("[I]t is generally recognized in Alabama that statutes of limitations are procedural…").  Thus, the Alabama statute of limitations applies to Auburn's unjust enrichment claim, even if another state's substantive law would govern the merits.

[8] The '032 and '944 patents are attached hereto as Exhibits A and B, respectively.  Although not attached to Auburn's Complaint, the '032 and '944 patents are specifically and extensively discussed in the Complaint, and

Auburn's Complaint alleges that IBM "appropriated Auburn's technologies and improperly obtained patent rights thereon." *See* Compl. at ¶ 44.

At the very latest, however, Auburn's claims for IBM's alleged wrongful conduct in "improperly obtain[ing] patent rights" necessarily accrued when the '032 and '944 patents issued — on September 7, 2004 and November 21, 2006, respectively.[9] Auburn did not file its Complaint against IBM asserting unjust enrichment, however, until July 23, 2009 — 4 years, 10 months after IBM's '032 patent issued, and 2 years, 7 months after IBM's '944 patent issued.[10] Auburn's unjust enrichment claim as to both the '032 and '944 patents is therefore barred by the Alabama statute of limitations, and the Court should dismiss Count III of the Complaint under Fed. R. Civ. P. 12(b)(6).

---

(continued…)

Auburn's Complaint seeks as a remedy to have these two patents assigned from IBM to Auburn. *See, e.g.*, Compl. at p.2, ¶ 9; p.5, ¶¶ 25-27; p. 7, ¶ 44; p.8, ¶ 48; and p.9, ¶ 9.

[9] *See, e.g., Wise v. Hubbard*, 769 F.2d 1, 2-3 (1st Cir. 1985) (noting that "[t]he United States Supreme Court has consistently held that the issuance of a patent and its recordation in the Patent Office constitutes notice to the world of its existence," and holding that state law tort claim for wrongful taking of patent became knowable and accrued when patent was issued); *Univ. Patents, Inc. v. Kligman*, Civ. A. Nos. 89-3525, 90-0422, 1991 WL 86399, at *1 (E.D. Pa. May 16, 1991) ("In finding that the plaintiffs' tort claims were barred by the applicable two-year statute of limitations, the Court relied on long standing case law that the issuance of a patent and its recordation in the Patent Office constitute notice to the world of its existence.") (*denying reconsideration of* 1991 WL 64652, at *8-9 (E.D. Pa. Apr. 22, 1991) (dismissing tort claims as barred by two-year statute of limitations and holding "[a]s a matter of law … the University was on notice of the existence of the photoaging patent when it was issued")) (copies attached as Exhibits C and D, respectively).

[10] Moreover, long before the patents formally issued, Auburn additionally had notice that IBM was pursuing the patent applications that led to IBM's '032 and '944 patents. IBM's '032 patent application was previously published as US 2003/0120445 on June 26, 2003, over 6 years before Auburn filed suit, and IBM's '944 patent application was previously published as US 2005/0049810 on March 3, 2005, more than 4 years before Auburn filed this suit. (*See* Exs. A and B at cover page under "Prior Publication Data").

  **B.** **Federal Patent Law Preempts Auburn's Claims for Unjust Enrichment (Count III) and Conversion (Count IV).**

   **1.** **Auburn Seeks To Change The Inventorship of IBM's '032 and '944 Patents, and That Can Only Be Done Under the Federal Patent Statute.**

Auburn's state law unjust enrichment and conversion claims are based on the allegation that IBM took Auburn's technology and wrongfully obtained patent rights thereon. *See* Compl. at ¶ 44 re: unjust enrichment ("IBM … appropriated Auburn's technologies and improperly obtained patent rights thereon."); ¶ 48 re: conversion ("IBM took control of Auburn's property … specifically by obtaining U.S. Patent Nos. 6,789,032 and 7,139,944 and depriving Auburn of its property rights.").

In pleading these claims, Auburn alleges that the inventorship of the '032 and '944 patents is incorrect. *See* Compl. at ¶ 28 ("The '032 and '944 patents are based in whole or in part on the misappropriation of the research of Dr. Singh and Mr. Barnett. While Mr. Barnett is listed as a co-inventor on the '032 and the '944 patents, Dr. Singh is not."). Auburn alleges that the '032 and '944 patents do not name the correct inventors, and that under the correct inventorship, the '032 and '944 patents should be assigned to Auburn. *See* Compl. at ¶ 20 ("Auburn's patent policy required Dr. Singh and Mr. Barnett to assign their patent rights to Auburn…"); ¶ 47 ("Auburn is the legal owner of technologies conceived of and developed by Dr. Singh and Mr. Barnett, and is entitled to possession of that property."). In other words, Auburn's conversion and unjust enrichment claims seek to change the inventorship of the '032 and '944 patents — which currently name inventors who have assigned their patent rights *to IBM* — to instead name inventors who purportedly were obligated to assign their patent rights *to Auburn*. Changing the inventorship is the basis for Auburn's request in the Complaint for "[a]n assignment of U.S. Patent Nos. 6,789,032 and 7,139,944 to Auburn." Compl. at p. 9, ¶ 9.

Correction of inventorship of an issued patent, however, is exclusively governed by federal patent law under 35 U.S.C. § 256 (2008). The Patent Statute requires that a patent be filed in the name of the correct inventor or inventors. *See* 35 U.S.C. §§ 111, 115, and 116. For issued patents, 35 U.S.C. § 256 permits the correction of non-fraudulent errors in inventorship:

> Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Commissioner may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error. The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Commissioner shall issue a certificate accordingly.

The inventorship of an issued patent is not easily changed, however. Because the inventors named in an issued patent are presumed to be correct, "the burden of showing misjoinder or nonjoinder of inventors [under § 256] is a heavy one and must be proved by clear and convincing evidence."[11] The rule requiring clear and convincing evidence to change the inventorship of an issued patent "rests on important policy considerations," because courts have recognized that there is a great temptation for even honest witnesses to reconstruct, so as to favor their own position, the extent of their purported contribution to an invention.[12]

---

[11] *Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997) (citation omitted).

[12] *Id.* ("In these circumstances, it would be inappropriate to permit a lower standard than clear and convincing evidence.").

6

### 2. Auburn's State Law Claims Seeking To Change The Inventorship of IBM's '032 and '944 Patents Are Preempted By Federal Patent Law.

State law is preempted where it enters "a field of regulation which the patent laws have reserved to Congress."[13] A state law tort claim is preempted when it is in conflict with federal patent law.[14] "If a plaintiff bases its tort action on conduct that is protected or governed by federal patent law, then the plaintiff may not invoke the state law remedy, which must be preempted for conflict with federal patent law."[15]

Here, Auburn's state law tort claims are based on conduct governed by the inventorship provisions of federal patent law. Auburn cannot use state law claims to change the inventorship of the '032 and '944 patents since Congress has dictated by statute the exclusive procedure for correcting inventorship errors in issued patents. Nor can Auburn sidestep, by couching its claims as state law torts, the federal law presumption that the inventorship of IBM's '032 and '944 patents is correct, and can only be changed if Auburn meets the "heavy burden" of showing by clear and convincing evidence that IBM's patents do not name the correct inventors.[16] As other courts have held under similar circumstances, the Patent Statute preempts Auburn's attempt to revise the inventorship of the '032 and '944 patents through the assertion of state law claims for unjust enrichment and/or conversion.[17]

---

[13] *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 167 (1989).

[14] *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1321 (Fed. Cir. 1998), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999) (holding that Federal Circuit law, rather than regional circuit law, governs whether the patent laws preempt a state law tort claim, and overruling prior case law to the extent it held otherwise).

[15] *Hunter Douglas*, 153 F.3d at 1335.

[16] *Hess*, 106 F.3d at 980.

[17] *See, e.g., Tavory v. NTP, Inc.*, 297 Fed. Appx. 976, 984 (Fed. Cir. 2008) (affirming dismissal of state law unjust enrichment claim as preempted by federal patent law: since the plaintiff's ownership interest in the patent depended entirely on whether he was a co-inventor, "the dispositive issue is [plaintiff's] alleged co-inventorship, which is governed exclusively by federal patent law.") (attached as Exhibit E); *Methode Elecs., Inc. v. Hewlett-Packard Co.*, No. C 99-04214 SBA, 2000 WL 1157933, at *2-3 (N.D. Cal. May 4, 2000) (dismissing

Auburn's state law claims for unjust enrichment (Count III) and conversion (Count IV) are preempted by federal patent law, and those claims should be dismissed under Fed. R. Civ. P. 12(b)(6).

### C. Auburn Fails to State a Claim for Conversion (Count IV).

Even if not preempted by federal patent law, Auburn's Count IV fails as a matter of law because the conversion of a patent is not recognized under the applicable state law and because Auburn has failed, in any event, to plead a necessary element of a conversion claim.

#### 1. Choice of Law: Vermont Substantive Law Applies to Auburn's Conversion Claim.

For tort claims, Alabama courts apply the test of *lex loci delicti* to determine which state's substantive law applies.[18] *Lex loci delicti* asks: where did the alleged injury occur?[19] Under Alabama law, the proper focus is therefore on where the tort causing the injury occurred,

---

(continued…)

defendant's state law counterclaims for unjust enrichment and conversion as preempted because "[t]he fundamental premise of each of these counterclaims as pled is that [plaintiff – patent owner] should have named [defendant] on the patent," and "[f]ederal patent law controls that analysis.") (attached as Exhibit F); *Concept Innovation v. CFM Corp.*, No. 04 C 3345, 2005 WL 670637, at *8 (N.D. Ill. Mar. 21, 2005) ("CFM's [conversion] counterclaim is preempted by federal patent law because the fundamental premise of the claim is that the Lucas entities unlawfully possess the patents by virtue of their failure to name CFM's employee-inventors on the patents.") (attached as Exhibit G).

[18] *Ruhnow v. Lane Heard Trucking, LLC*, No. 2:05-cv-527-MEF, 2006 WL 3742212, at *2 (M.D. Ala. Dec. 18, 2006).

[19] *Id.*

*i.e.*, the location of the conduct giving rise to the alleged conversion.[20] Other jurisdictions applying *lex loci delicti* to tort claims have taken the same approach.[21]

Auburn's conversion claim is based on IBM's alleged wrongful procurement of the '032 and '944 patents. *See* Compl. at ¶ 48. As pleaded by Auburn, the acts of IBM's alleged conversion of the '032 and '944 patents occurred in Vermont. Auburn alleges that IBM asked whether Dr. Barnett would be interested in spending a summer interning at IBM (*see* Compl. at ¶ 22), and alleges that IBM's Burlington, Vermont facility was the location of Dr. Barnett's work at IBM (*see* Compl. at ¶ 23). The '032 and '944 patents identify Dr. Barnett as a resident of Vermont. *See* Exs. A and B (cover page indicates city and state of each inventor).[22] Indeed, Auburn's Complaint does not identify a single action by IBM occurring in the state of Alabama related to the alleged conversion of the '032 and '944 patents.[23] Vermont substantive law should therefore apply to Auburn's conversion claim.

---

[20] *See Jones v. Triple Crown Services Co.,* 44 F. Supp. 2d 1339, 1342-43 (M.D. Ala. 1999) ("Under the principle of '*lex loci delicti*,' Alabama courts determine the substantive rights of an injured party according to the law of the state where the injury occurred. The conduct and statements giving rise to the Plaintiff's claims [here] occurred in Georgia.") (citation omitted); *Bryant v. Cruises, Inc.*, 6 F. Supp. 2d 1314, 1317 (N.D. Ala. 1998) ("The choice-of-law rule traditionally applied by Alabama in tort cases is *lex loci delicti*: the substantive law of the place of the wrong."); *Randolph v. Tenn. Valley Auth.*, 792 F. Supp. 1221, 1222 (S.D. Ala. 1992) ("In Alabama, the traditional choice of law rule of *lex loci delicti* governs tort causes of action and requires that the substantive law of the place where the tort occurred must be employed, while procedural law of the forum state is to be applied.").

[21] *See, e.g., First Union Nat'l Bank v. New York Life Ins. and Annuity*, 152 F. Supp. 2d 850, 854 (D. Md. 2001) (applying Maryland law to conversion claim where the last wrongful act occurred in Maryland); *Western Smelting & Metals, Inc. v. Slater Steel, Inc.*, 621 F. Supp. 578, 582-83 (N.D. Ind. 1985) ("[T]he place where the tort was committed … is 'the state where the last event necessary to make an actor liable for an alleged tort takes place.'") (quoting *Restatement of Conflicts of Laws*, § 377 (1934)).

[22] All of the named inventors of the '032 patent are similarly identified as residents of Vermont. Four of the five named inventors of the '944 patent are identified as residents of Vermont, and the other inventor is identified as a New York resident.

[23] At most, Auburn alleges as a purported basis for jurisdiction that "IBM committed a tortuous [*sic*] act that injured Auburn, a citizen of the state of Alabama" (*see* Compl. at ¶ 13), thereby implying that the allegedly tortious act occurred outside the state of Alabama. Notably, Auburn does not – and cannot – allege that IBM committed any tortious act *in the state of Alabama*.

### 2. Vermont Law Does Not Recognize Conversion of Patents.

No Vermont decision has extended the tort of conversion to patents.[24] Vermont applies conversion only to tangible property (a physical object) or intangible property merged into a physical document (such as a bond, stock certificate, bill of exchange, money, or negotiable instrument).[25] Patents are generally recognized as intangible property.[26] As intangible property, a patent finds no value in the physical document in which it appears — contrasted, for example, with a stock certificate that confers certain benefits upon its holder. Auburn's conversion claim is fatally defective because the '032 and '944 patents cannot be converted under Vermont law.

### 3. Auburn Has Failed to Plead A Necessary Element Of Conversion As Required By Both Vermont and Alabama Law.

Regardless of whether Vermont or Alabama law is applied to Auburn's conversion claim, that claim should be dismissed because Auburn has failed to plead a necessary element: that Auburn has title or an immediate right to possess IBM's '032 and '944 patents. This is a mandatory pleading requirement in both Vermont and Alabama.[27] At least one Alabama court has rejected as a matter of law a conversion claim for failure to comply with this requirement.[28]

---

[24] Nor has any Alabama decision found a defendant liable for conversion of a patent. In *SLT, LLC v. Tri Khan Tran*, the S.D. Alabama entered summary judgment that a plaintiff alleging conversion of a patent could not, as a matter of law, prove a necessary element of its claim, *i.e.*, that the plaintiff ever held title to or possession of the disputed patent. No. 07-0815-CG-C, 2009 WL 532169, at *10-12 (S.D. Ala. Mar. 3, 2009)

[25] *Montgomery v. Devoid*, 915 A.2d 270, 275 n.1 (Vt. 2006). *See also Lyon v. Bennington College Corp.*, 400 A.2d 1010, 1012 (Vt. 1979) (refusing to extend conversion to "tenure," and noting that simply because something is a "property interest," it does not necessarily qualify for the tort of conversion).

[26] *See, e.g., Precision Components, Inc. v. C.W. Bearing USA, Inc.*, 630 F. Supp. 2d 635, 642 (W.D.N.C. 2008) ("[T]he claim for conversion of the patent must fail as a matter of law…. An 'intangible asset' is an asset that is not a physical object, such as a patent…") (quotations omitted); *Richmond v. Nat'l Institute of Certified Estate Planners*, No. 06 C 1032, 2006 WL 2375454, at *6-7 (N.D. Ill. Aug. 15, 2006) (refusing to extend conversion claim to intellectual property); *Univ. of Colo. Found., Inc. v. Am. Cyanamid*, 880 F. Supp. 1387, 1392-95 (D. Colo. 1995) (refusing to recognize claim for conversion where defendant was alleged to have wrongfully filed and obtained a patent).

[27] Accord *Miller v. Merchants Bank*, 415 A.2d 196, 199 (Vt. 1980) ("To make out a claim of conversion … plaintiff must show an immediate right to possession.") with *Roberson v. Ammons,* 477 So.2d 957, 962 (Ala.

10

Here, Auburn has failed to plead that it has legal title to or has an immediate right to possess IBM's '032 and '944 patents. Instead, Auburn admitted in the Complaint that the '032 and '944 patents are IBM's property. *See* Compl. at p.2, ¶ 9 ("The United States Patent and Trademark Office issued United States Patent Nos. 6,789,032 … and 7,139,944 … to IBM."). *See also* Exs. A and B (cover page for each patent indicating the assignee is IBM). This deficiency is accentuated by Auburn's request to have the '032 and '944 patents assigned to Auburn. *See* Compl. at p.9, ¶ 9. The Complaint therefore fails to state facts that, if true, would establish Auburn's immediate right to possess the '032 and '944 patents, and the Court should dismiss Auburn's conversion claim (Count IV) under Fed. R. Civ. P. 12(b)(6).[29]

---

(continued…)

1985) ("Legal title with immediate right of possession by the plaintiffs to the converted property at the time of conversion is a necessary element of the conversion action.").

[28] *See, e.g., SLT, LLC v. Tri Khan Tran*, No. 07-0815-CG-C, 2009 WL 532169, at *11-12 (S.D. Ala. Mar. 3, 2009) (granting summary judgment to defendant on claim for conversion of a patent because plaintiff failed to establish that it "ever acquired title to, or possession of, the patent").

[29] *See SLT*, 2009 WL 532169, at *11 ("SLT has not directed the court to any cases in which a conversion claim was upheld when the plaintiff never owned or possessed the property that was allegedly converted.").

**IV.    CONCLUSION**

The Court should dismiss Counts III and IV of Auburn's Complaint.

DATED:  September 28, 2009                                  Respectfully Submitted,

*/s/ F. Chadwick Morriss*
Mike Brock
Alabama State Bar No. 5280-b61r
mbrock@cov.com
F. Chadwick Morriss
Alabama State Bar No. 8504-s75f
fmorriss@cov.com
COVINGTON & BURLING LLP
Interstate Park Center
2000 Interstate Park Drive, Suite 302
Montgomery, Alabama  36109
Telephone:  334-819-7318
Facsimile: 334-819-7321

*Attorneys for Defendant,*
*IBM Corporation*

*Of Counsel:*

Kenneth R. Adamo (*pro hac vice* pending)
Ohio State Bar No. 0009303
kradamo@jonesday.com
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114-1190
Telephone:  216-586-3939
Facsimile:  216-579-0212

John A. Marlott (*pro hac vice* pending)
Illinois State Bar No. 6230613
jamarlott@jonesday.com
Brent P. Ray (*pro hac vice* pending)
Illinois State Bar No. 6291911
bpray@jonesday.com
JONES DAY
77 West Wacker Drive
Chicago, Illinois  60601-1692
Telephone:  312-782-3939
Facsimile:  312-782-8585