IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| AUBURN UNIVERSITY, ) | |
| ) | |
| Plaintiff, ) | |
| v.           ) | CASE NO. 3:09-cv-694-MEF |
| ) | |
| INTERNATIONAL BUSINESS  ) | (WO—Publish) |
| MACHINES, CORP.,         ) | |
| ) | |
| Defendant.  ) | |

## **MEMORANDUM OPINION AND ORDER**

This case is before the Court on Auburn University's ("Auburn") Motion for Leave to File an Amended Complaint (Doc. # 50), filed on November 16, 2009. For the following reasons, the Court will deny the motion with respect to Auburn's proposed state-law claims and will grant the motion in all other respects.

### I.  BACKGROUND

On July 23, 2009, Auburn filed this lawsuit against International Business Machines, Corp. ("IBM"), alleging patent infringement, conversion, and unjust enrichment.  On November 9, 2009, upon IBM's motion, this Court dismissed Auburn's state-law conversion and unjust-enrichment claims, but allowed Auburn to move for leave to amend its complaint.[1]  (*See* Doc. # 47.)

---

[1] Senior U.S. District Judge W. Harold Albritton entered the November 9, 2009 order. This case has since been reassigned.  (*See* Doc. # 61.)

Consistent with that order, Auburn now moves for leave to amend its complaint, and it has attached its amended complaint to its motion. Auburn seeks to re-plead its state-law conversion and unjust-enrichment claims. (*See* Counts III & IV, Doc. # 50-1 at 10–12.)[2] Auburn's proposed conversion claim, in Count IV of the amended complaint, alleges:

> 75. IBM wrongfully and intentionally took control and exercised dominion over Auburn's inventions by filing patent applications in IBM's own name on Auburn's patents and obtaining the IBM patents to the exclusion of Auburn's possessory rights to its inventions.

(*Id.* at 12.) Auburn's proposed unjust-enrichment claim, in Count III of the amended complaint, alleges:

> 65. IBM engaged in unconscionable conduct, including abuse of a confidential relationship and misuse of Auburn's confidential information, when it illegally, wrongfully, knowingly, and without authority, misappropriated Auburn's inventions and improperly obtained patent rights thereon, in the form of the IBM patents.
> . . . .
> 68. As a result of its unlawful acquisition of patents covering Auburn's inventions, IBM received benefits from Auburn, the retention of which is against equity and good conscience and would be unjust, including, but not limited to, the IBM patents themselves[.]

(*Id.* at 10–11.)

Not surprisingly, IBM opposes Auburn's attempt to re-plead its state-law

---

[2] Auburn also seeks to add two federal correction-of-inventorship claims. (*See* Counts I & II, *id.* at 9–10.) IBM does not challenge this addition.

claims, arguing that such an amendment would be futile because the proposed state-law claims are legally deficient. Specifically, IBM argues that the proposed state-law claims fail as a matter of law because, among other reasons, they are time-barred by the applicable statutes of limitations. After a close examination of the amended complaint and the exhibits attached to it, this Court agrees that the applicable statutes of limitations bar Auburn's proposed state-law claims.

## II. LEGAL STANDARD

"[A] district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile. . . . [D]enial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal." *Hall v. United Ins. Co. of Am.*, 367 F. 3d 1255, 1262–63 (11th Cir. 2004) (internal quotation marks omitted); *see also Moore v. Baker*, 989 F.2d 1129, 1132 (11th Cir. 1993) (affirming a district court's denial of leave to amend a complaint because "the proposed new claims are barred by the applicable statute of limitations").

## III. DISCUSSION

### A. Conversion (Count IV)

This Court first examines the proposed conversion claim. In Alabama, an action for conversion is subject to a six-year statute of limitations. Ala. Code § 6-

3

2-34(3) (1975).  This six-year limitations period begins to run "at the time the conversion occurs."  *Casassa Liberty Life Ins. Co.*, 949 F. Supp. 825, 831 (M.D. Ala. 1996) (Albritton, J.).  Therefore, the limitations period begins to run at the time of the purported "wrongful exercise of dominion over property to the exclusion or in defiance of a plaintiff's rights . . . ."  *Green County Bd. of Educ. v. Bailey*, 586 So. 2d 893, 898 (Ala. 1991).

In the amended complaint, Auburn specifically alleges that IBM wrongfully "took control and exercised dominion" over Auburn's intellectual property "by filing patent applications" on that intellectual property in its own name.  (Doc. # 50-1 at 12, ¶ 75.)  Auburn does not allege that IBM wrongfully exercised dominion over Auburn's intellectual property prior to the filing of IBM's first patent application on that property.  Nor does Auburn assert that IBM misappropriated separate and distinct intellectual property when it filed its subsequent patent applications.  Thus, IBM's alleged conversion of the intellectual property at issue in this case was complete no earlier and no later than the date on which IBM filed its first patent application on that intellectual property.

According to the amended complaint and the exhibits attached to it, IBM filed its first utility patent application on Auburn's intellectual property on June 26, 2003.  Auburn filed this suit more than six years later, on July 29, 2009.

Therefore, the six-year statute of limitations for actions for conversion bars Auburn's proposed conversion claim.[3]

### B. Unjust-Enrichment (Count III)

Turning next to the proposed unjust-enrichment claim, Auburn and IBM disagree about which statute of limitations applies to the claim. IBM argues that the claim is governed by Alabama Code § 6-2-38(*l*), which imposes a two-year statute of limitations on "[a]ll actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section." But Auburn contends that its unjust-enrichment claim is based on an implied contract and, therefore, is governed by Alabama Code § 6-2-34(9), which imposes a six-year statute of limitations on "[a]ctions upon any simple contract or specialty not specifically enumerated in this section."

After a thorough review of the pertinent case law, this Court finds that the Alabama state courts have not decided whether unjust-enrichment claims are tort claims or implied-contract claims, much less which statute of limitations applies to such claims. The two cases to which IBM cites in support of its position do not

---

[3] The parties disagree about whether the misappropriation occurred on the date on which IBM filed its first *provisional* patent application, December 26, 2001, or on the date on which IBM filed its first *utility* patent application, June 26, 2003. The distinction is irrelevant since neither date is within six years before the date of the filing of this suit.

resolve the issue. In the first case, *Birmingham Hockey Club, Inc. v. National Council on Compensation Insurance, Inc.*, 827 So. 2d 73 (Ala. 2002), the Alabama Supreme Court affirmed a trial court's dismissal of an unjust-enrichment claim as barred by § 6-2-38(*l*)'s two-year statute of limitations, but not because § 6-2-38(*l*) applied to the claim. Rather, the court affirmed the dismissal because the issue of § 6-2-38(*l*)'s applicability had not been raised below and, therefore, had not been preserved for appeal. *Id.* at 80–81. Likewise, in the second case, *Johnston-Tombigbee Furniture Manufacturing Co. v. Berry*, 937 So. 2d 1047 (Ala. Civ. App. 2006), the Alabama Court of Civil Appeals affirmed a trial court's dismissal of an unjust-enrichment claim as barred by § 6-2-38(*l*)—again, not because § 6-2-38(*l*) applied to the claim, but because the claim was so old that it failed as a matter of law regardless of which of the potentially applicable statutes of limitations applied to the claim. *Id.* at 1050–51. Thus, neither case supports IBM's position, and the Court must approach the question of which statute of limitations applies to Auburn's proposed unjust-enrichment claim without guidance from state-court case law.

Looking then to the statutory language itself, § 6-2-38(*l*) requires this Court—in the absence of a valid and enforceable express contract—to inquire into whether the claim at issue seeks recovery for an *injury* that *arises* from contract.

Therefore, it would be improper to classify all unjust-enrichment claims as either tort claims subject to the two-year statute of limitations or implied-contract claims subject to the six-year statute of limitation.  Rather, some unjust-enrichment claims, such as claims for enrichment flowing from a breach of the corporate fiduciary duties of loyalty and due care, clearly arise from tort injuries, while other unjust-enrichment claims, such as claims for enrichment flowing from the rendering of substantial performance on a merely technically invalid contract, clearly arise from contract injuries.

While it might be difficult in close cases to separate one kind of unjust-enrichment claim from another, it is not difficult in this case.  Auburn alleges that IBM converted Auburn's intellectual property and then used that intellectual property to unjustly enrich itself.  Thus, Auburn's proposed unjust-enrichment claim arises from IBM's alleged conversion of Auburn's intellectual property, which is a classic tort injury.  And Auburn admits as much in the first sentence of its reply brief, in which it describes this case as "a simple case of theft."  (Doc. # 64 at 1.)  Therefore, § 6-2-38(*l*)'s two-year statute of limitations applies to Auburn's proposed unjust-enrichment claim.[4]

---

[4] Auburn also likens its unjust-enrichment claim to a claim for "money had and received," which is afforded a six-year limitations period under § 6-2-34(5). But Auburn has not argued that its unjust-enrichment claim is, in fact, a claim for "money had and received," and regardless,

Auburn's unjust-enrichment claim could not have accrued any later than the date on which IBM obtained its first utility patent on the intellectual property at issue in this case. According to the amended complaint and the exhibits attached to it, the U.S. Patent and Trademark Office issued U.S. Patents 6,789,032 and 7,139,944 to IBM on September 7, 2004, and November 21, 2006, respectively. Both of these issuance dates are more than two years before the date on which Auburn filed this suit—July 29, 2009. Consequently, § 6-2-38(*l*)'s two-year statute of limitations bars Auburn's proposed unjust-enrichment claim.

### C.  *Nullum Tempus*

Auburn makes one general counter-argument to IBM's statute-of-limitations defenses. Auburn argues that the common-law doctrine of *nullum tempus occurrit reipublicae* (which is usually translated as "no time runs against the state") exempts both of its proposed state-law claims from any statute of limitations that might otherwise apply. The Court disagrees.

The Alabama Supreme Court has addressed the doctrine of *nullum tempus* only once in the last forty years. In *Board of School Commissioners v. Architects Group, Inc.*, the court defined *nullum tempus* as "a common-law doctrine

---

such claims are governed by a statute of limitations that is entirely separate from either of the potentially applicable statutes of limitations that are at issue here.

providing that time does not run, i.e., that a statute of limitations does not apply, against the sovereign." 752 So. 2d 489, 419 n.3 (Ala. 1999) (citing *Black's Law Dictionary* 1096 (7th ed. 1999)). While this definition on its face would seem to protect Auburn, as a state institution, from all statute-of-limitations defenses, the court's decision in *Board of School Commissioners* significantly curtailed *nullum tempus*'s applicability. Specifically, the court held that *nullum tempus* "does not apply to the political subdivisions of the State" and, consequently, that it did not protect a county school board from a defendant's statute-of-limitations defense. *Id.* at 492 (quoting *Miller v. State*, 38 Ala. 600, 603–04 (1863) ("It is well settled, that the maxim, [*nullum tempus*], applies only to the State at large, and not to the political subdivisions thereof. Hence, the statute of limitations runs against municipal corporations, and other authorities established to manage the affairs of the public subdivisions of the State.")).

This Court does not see any difference between the facts of *Board of School Commissioners* and the facts of this case. Auburn, like the county school board in *Board of School Commissioners*, brought this suit in its own name and not in the name of the state of Alabama. In fact, state universities and county school boards have a similar relationship to the state writ large, and both fall within the Alabama Supreme Court's plain-language understanding of "political subdivision." In

9

addition, Auburn has not persuasively explained what policy considerations, if any, should persuade this Court to treat state universities and county school boards differently for *nullum tempus* purposes.

Rather, Auburn points to really old case law: specifically, the Alabama Supreme Court's 1909 decision in *Cox v. Board of Trustees of the University of Alabama*, 49 So. 814 (Ala. 1909). Auburn argues that *Cox* stands for the proposition that state universities are "part of the state" for *nullum tempus* purposes. Again, the Court disagrees with Auburn.

In *Cox*, the University of Alabama brought an ejectment action against a trespasser who asserted an adverse-possession defense, and the court was asked to choose which of two potentially applicable statutes of limitations applied to the action: (1) a now-defunct twenty-year statute of limitations that, by its own terms, expressly applied to actions brought by the state; or (2) the default ten-year statute of limitations for ejectment actions. *Id.* at 815. The court ruled that the special twenty-year statute of limitations applied to the university's ejectment action because the university, as "part of the state," was covered by the statute's express terms. *Id.* at 817. Thus, the court ruled that the university was "part of the state" as a matter of statutory construction; the decision did not touch on whether the university was a "political subdivision" of the state for common-law *nullum*

*tempus* purposes. The court did not decide whether the university would have been subject to the default ten-year limitations period had the twenty-year limitations period not applied, nor did it purport to hold that a state institution that is not "part of the state" for purposes of the special twenty-year statute of limitations must be, by extension, a "political subdivision" of the state for *nullum tempus* purposes.

This interpretation of *Cox* is bolstered by the outcome in *Board of School Commissioners*. Had the Alabama Supreme Court used its definition of "part of the state" in *Cox* to define the scope of "political subdivision" in *Board of School Commissioners*, the court would have ruled the other way in *Board of School Commissioners*. That is, under the standard applied by the court in *Cox*,[5] neither state universities *nor* county school boards would be "political subdivisions" of

---

[5] In *Cox*, the Alabama Supreme Court applied the following standard:

> "It would therefore seem to follow that where an institution exists purely for governmental purposes in such a public corporation, when thus governed and controlled by the state, and when it acts exclusively as an agent of the state for the education or protection of the people and for the promotion of the best interests of the children of the state, an institution which has no stockholders, no parties who have any interest in it or its affairs, further than for the administration of the duties imposed upon them by law as agents or officers of such institution, the statute of limitations is not applicable as a defense in actions brought in the corporate name of such institution, unless the defense is available in similar actions brought by the state for its own use and benefit."

*Id.* at 818.

11

the state for *nullum tempus* purposes.  Considering that the Alabama Supreme Court in *Board of School Commissioners* decided otherwise for county school boards in an opinion that did not even discuss the standard set out in *Cox*, this Court believes that it is extremely unlikely that the Alabama Supreme Court would view *Cox* as having any bearing on the case before this Court today.

Therefore, the Court will follow the straightforward plain-language approach of *Board of School Commissioners*.  Following this approach, the Court finds that *nullum tempus* does not protect Auburn's proposed state-law claims from IBM's statute-of-limitations defenses.

## IV.  CONCLUSION

Accordingly, it is hereby ORDERED:

1. Auburn's Motion for Leave to File an Amended Complaint (Doc. # 50) is DENIED with respect to Auburn's proposed Count III (unjust enrichment) and Count IV (conversion) and GRANTED in all other respects.

2. Auburn must file an amended complaint consistent with this Memorandum Opinion and Order on or before June 17, 2010.

DONE this the 8th day of June, 2010.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE