DUNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| AUBURN UNIVERSITY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:09-cv-00694-MEF |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | § § § § | |
| Defendant. | § § | |

**IBM'S MOTION UNDER FEDERAL RULE 12(c) FOR JUDGMENT
ON AUBURN'S CLAIMS FOR INDIRECT INFRINGEMENT AND
DOCTRINE OF EQUIVALENTS INFRINGEMENT**

IBM requests that the Court grant judgment in favor of IBM on Auburn's claims for indirect infringement and for infringement under the doctrine of equivalents pursuant to Fed. R. Civ. P. 12(c).[1]

**I.    INTRODUCTION**

Auburn contends that IBM directly and literally infringes the two asserted Auburn patents. With this Motion, IBM does not currently seek judgment on Auburn's direct, literal infringement claims.  At the appropriate time, IBM presently anticipates filing a fully case-dispositive motion for summary judgment on Auburn's direct, literal infringement claims, consistent with the Court's Amended Scheduling Order.  (Dkt. No. 207).

---

[1] Rule 12(c) allows a party, after the pleadings are closed, to move for judgment on the pleadings.  *See* Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings pursuant to Rule 12(c) is governed by the same standard as a motion to dismiss under Rule 12(b)(6).  *See United States v. Ala. Dep't of Mental Health & Mental Retardation*, 2010 WL 447399, at *2 (M.D. Ala. Feb. 9, 2010); *see also Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002); *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

But Auburn also has sought to "reserve" for trial alternative claims that IBM indirectly infringes the Auburn patents, and that IBM infringes the Auburn patents under the doctrine of equivalents. These alternative infringement claims have never been adequately pleaded, and they should be removed from this case. Auburn's Amended Complaint relies on little more than statutory language to support its indirect infringement claims, a pleading approach that the United States Supreme Court has expressly rejected, and Auburn has failed entirely to plead a doctrine of equivalents claim. The boilerplate allegations in Auburn's Amended Complaint do not provide an adequate basis to allow Auburn's unsupported indirect infringement allegations and its non-existent doctrine of equivalents allegations to proceed any further.

Over two years have passed since Auburn first filed this lawsuit, and despite extensive and exhaustive discovery, Auburn has failed to identify *any* act of indirect infringement by IBM or *any* argument that IBM infringes under the doctrine of equivalents. Auburn's complete failure in this regard dates to its original complaint in July 2009, and this failure has been repeated in Auburn's June 2010 Amended Complaint, its Court-ordered August 2010 infringement contentions, and its most recent Court-ordered July 2011 infringement contentions. In each instance, Auburn has failed to adequately set forth a legitimate claim for either indirect infringement or infringement under the doctrine of equivalents. The Court should now enter judgment for IBM on these inadequately pleaded claims, and should remove them from the case before the parties proceed to the expert and dispositive motion phase of the case over the next several months and as the April 2012 trial date approaches.[2]

---

[2] IBM is filing concurrently with this Rule 12(c) Motion a request that the Court bifurcate for trial Auburn's inventorship claims regarding the IBM patents from Auburn's infringement claims regarding the Auburn patents. IBM has filed these motions now with the goal of better preparing this complicated case for the April 2012 jury trial, by framing the infringement issues truly in dispute and by focusing the jury trial on just those legal issues the jurors will be asked to decide.

## II.     BACKGROUND

### A.     There Are Different Potential Types of Patent Infringement Claims.

<u>Direct Infringement / Indirect Infringement</u>:  By statute, patent infringement is either direct or indirect.  A direct patent infringement theory is governed by 35 U.S.C. § 271(a).  Indirect patent infringement theories are governed by 35 U.S.C. § 271(b) (inducement of patent infringement) and 35 U.S.C. § 271(c) (contributory patent infringement).

<u>Literal Infringement / Doctrine of Equivalents Infringement</u>:  Further, patent claims may be infringed either literally or under the doctrine of equivalents.  A literal infringement theory is based on an allegation that an accused process literally reads on each and every element of the claimed method.  *See Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995).  A theory of infringement under the doctrine of equivalents, by comparison, is based on an allegation that one or more steps of the accused process is not literally present, but is present via some equivalent.  *See Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997).

### B.     Auburn Has Never Adequately Pleaded Indirect Infringement.

Auburn's First Amended Complaint for Correction of Inventorship and Patent Infringement ("Amended Complaint") provides only the following conclusory allegations regarding indirect infringement of both the Auburn '366 and '306 Patents:

> Upon information and belief, IBM has directly infringed, contributed to and/or actively induced infringement of the ['366 / '306] patent and is continuing to directly infringe, contribute to and/or actively induce infringement by making, using, importing, offering for sale, soliciting sales by others, enabling or assisting with sales by others of, and/or selling within the United States products, including, without limitation, integrated circuits tested using the claimed methods, which is covered by one or more claims of the ['366 / '306] patent.

Amended Complaint at ¶¶ 63, 69.  Other than stating generally that IBM "has contributed to and/or actively induced infringement," Auburn's Amended Complaint fails to provide any other allegations or facts allegedly supporting an indirect infringement claim.

In June 2010, the Court entered an initial Scheduling Order that required Auburn to provide by August 2010 its final asserted claims and infringement contentions.  (Dkt. No. 91.)  The June 2010 Scheduling Order mandated that Auburn could later modify its infringement contentions "only by order of the Court upon a showing of good cause."  Auburn's infringement contentions provided to IBM in August 2010 contained no allegations regarding indirect infringement; instead Auburn only "reserved the right" to assert that IBM indirectly infringed "based on further case investigation and discovery, including anticipated third-party discovery."[3] (Exhibit A.)

Throughout the Fall of 2010, the parties proceeded through the *Markman* claim construction process as directed by the Court.  The parties submitted extensive briefing to the Court, and the Court conducted a full-day *Markman* hearing in January 2011.  During the *Markman* process, the Court and the parties proceeded with the understanding that Auburn's infringement claims against IBM were limited (based on the pleadings and Auburn's required disclosures under the Scheduling Order) to direct, literal patent infringement.

After the Court issued its Claim Construction Order in April 2011, Auburn supplemented its response to IBM Interrogatory No. 1 regarding Auburn's infringement contentions.  (*See*

---

[3] In September 2010, IBM moved for an order directing Auburn to fully disclose any indirect infringement or doctrine of equivalents infringement theories.  (Dkt. No. 110.)  The Court denied IBM's motion on December 3, 2010, finding that Auburn could, at that time, reserve the right to assert alternative infringement claims "upon a showing of good cause to this Court."  (Dkt. No. 139.)  IBM's current motion, filed after the Court's entry of an Amended Scheduling Order in May 2011, after nearly two full years of fact discovery, and on the eve of the expert witness and dispositive motion phases of the case, asks the Court to remove Auburn's inadequately pleaded and factually-unsupported alternative infringement claims under Federal Rule 12(c).  There is no excuse for Auburn's repeated failure to adequately plead and disclose these alternative claims earlier in the case, and there can be no good cause for amending the pleadings at this late date.

Exhibit B.)  Auburn once again provided no allegations regarding indirect infringement and, once again, only claimed it was  "reserving" the right to assert indirect infringement by IBM "based on further case investigation and discovery."  (*See id.* at 10-11.)

On May 17, 2011, after a telephonic scheduling conference with the Court (*see* Minute Order dated May 5, 2011), during which IBM explained the critical importance of having complete and final infringement contentions from Auburn before proceeding to the expert and summary judgment phases of the case, the Court issued an Amended Scheduling Order.  That Amended Scheduling Order—which Auburn agreed to in advance—required Auburn to supplement its responses to IBM's Interrogatory Nos. 1 & 2 to *fully* and *finally* state its infringement contentions by July 15, 2011.  (Dkt. No. 207.)

Even after extensive discovery over the course of nearly two years, including a total of over 100 hours of deposition testimony from twenty different IBM witnesses, Auburn's July 15, 2011, supplemental responses to IBM's Interrogatory Nos. 1 & 2 still failed to identify or explain how IBM supposedly indirectly infringes the Auburn patents.  Auburn's Court-ordered responses, yet again, contained only a "reservation" of Auburn's right to assert indirect infringement "should IBM contend that it does not directly or literally perform one or more limitations of the asserted claims and/or based on further case investigation and discovery."  (*See* Exhibit C at 4, 7.)  In direct conflict with Auburn's claimed basis for its purported and repeated attempts at some "reservation" of rights, IBM has consistently and repeatedly *denied* that it directly, literally (or in any way) infringes the Auburn patents since the very beginning of this case over two years ago.[4]

---

[4] *See, e.g.*, Answer & Countercls. of IBM Corp., Sept. 28, 2009, Dkt. No. 29; *see also* IBM Corp.'s Answer & Countercls. to Auburn's First Am. Compl. for Correction of Inventorship & Patent Infringement, July 1, 2010, Dkt. No. 94.

### C. Auburn Has Never Adequately Pleaded Infringement Under The Doctrine Of Equivalents.

Auburn's Amended Complaint contains no allegations whatsoever that IBM infringes the Auburn Patents under the doctrine of equivalents. *See* Amended Complaint at ¶¶ 42-47, 61-71. Auburn's Court-ordered infringement contentions provided to IBM in August 2010 similarly contained no allegations regarding infringement under the doctrine of equivalents, and, yet again, only "reserved" the right to assert this alternative infringement theory

> should IBM contend that it does not literally perform one or more elements of the Asserted Claims and/or based on further case investigation and discovery. Similarly, Auburn reserves the right to assert infringement under the doctrine of equivalents following claim construction by the Court.

(Exhibit A.) As stated above, at that time, IBM had already contended in multiple pleadings, on multiple occasions, that it does ***not*** infringe the Auburn patents, literally or otherwise.

After the Court's Claim Construction Order, Auburn supplemented the infringement contentions in its response to IBM Interrogatory No. 1, but Auburn again provided no allegations regarding the doctrine of equivalents. Once more, Auburn only "reserved" the right to allege infringement under the doctrine of equivalents "should IBM contend that it does not literally perform one or more elements" of the asserted claims or "based on further case investigation and discovery." (*See* Exhibit B at 9, 11.) Auburn's allegedly final supplemental responses to IBM's Interrogatory Nos. 1 & 2 again contained no allegations of or supporting facts under the doctrine of equivalents. As usual, Auburn provided no allegations or facts supporting a doctrine of equivalents claim, and offered only the same reservation qualifiers as in its previous pleadings. (*See* Exhibit C at 4, 7.)

### III. ARGUMENT

#### A. After *Twombly* And *Iqbal*, Claims Must Have Facial Plausibility.

In order to state a claim upon which relief may be granted, a complaint must include a "short and plain statement of the claim showing that the pleading is entitled to relief." Fed. R. Civ. P. 8(a)(2). As the Supreme Court recently held, this standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A complaint that contains only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is inadequate to meet this standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As the Supreme Court has explained, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950. To assert a claim with "facial plausibility," a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. If the complaint does not permit the Court to infer "more than the mere possibility of misconduct," the plaintiff has failed to state a claim upon which relief may be granted. *See id.* at 1950.

The Eleventh Circuit has recently applied the standard set forth in *Twombly* and *Iqbal* to procedural motions to dismiss under Rule 12(b)(6) (which precedent also applies to Rule 12(c) motions, see note 1 *supra*). The court held that to survive a motion to dismiss, a complaint must contain more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1332 (11th Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1949); *see also Ironworkers Local Union 68 v. AstraZeneca Pharms., LP*, 634 F.3d 1352, 1359 (11th Cir. 2011) (affirming grant of motion to dismiss because plaintiff failed to state a plausible claim for relief under *Twombly* and *Iqbal*).

Here, Auburn has not even attempted to support "threadbare recitals of the elements" with "mere conclusory statements," but has continuously "reserved" its right to provide allegations at some point in the future. Auburn's claims for indirect infringement and for infringement under the doctrine of equivalents fail outright under *Twombly* and *Iqbal.*

### B. Auburn Has Failed To State A Claim For Indirect Infringement.

Auburn's Amended Complaint alleges, in a conclusory fashion, that IBM has indirectly infringed the asserted patents through inducement and contributory infringement. *See* Amended Complaint at ¶¶ 63, 69. This is an unadorned, textbook, "the defendant unlawfully harmed me" accusation, which fails to inform IBM as to how it allegedly induced infringement or contributed to the infringement by use of some unspecified method or by the actions of some unidentified third party.

Facial plausibility requires pleading facts that permit a reasonable inference that the defendant is liable for the alleged misconduct. *Iqbal*, 129 S. Ct. at 1949. Here, Auburn has failed to plead such facts in support of any indirect infringement claim against IBM.

#### 1. Active Inducement Of Infringement

A claim of active inducement requires more than merely selling a product or providing a service. *See* 35 U.S.C. § 271(b). To prevail on an inducement claim, "the patentee must establish 'first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.'" *ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007) (quoting *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304-05 (Fed. Cir. 2002)). The "specific intent" element of inducement is satisfied where the defendant "intended to cause the acts that constitute the direct infringement" and the defendant "kn[ew] or should have known tha[t] its action would cause the direct infringement." *DSU Medical Corp. v. JMS*

*Co., Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006). The United States Supreme Court recently clarified that "induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.,* 131 S. Ct. 2060, 2068 (2011). Thus, inducement requires not merely knowledge of the direct infringer's activities, but knowledge that the direct infringer's activities amounted to patent infringement. *Id.* at 2065, 2068; *see also DSU Medical Corp. v. JMS Co., Ltd.*, 417 F.3d at 1306.

In support of its purported claim for active inducement here, Auburn states in the Amended Complaint:

> Upon information and belief, IBM has directly infringed, contributed to and/or **actively induced infringement** of the ['366 / '306] patent and is continuing to directly infringe, contribute to and/or **actively induce infringement** by making, using, importing, offering for sale, soliciting sales by others, enabling or assisting with sales by others of, and/or selling within the United States products, including, without limitation, integrated circuits tested using the claimed methods, which is covered by one or more claims of the ['366 / '306] patent.

Amended Complaint at ¶¶ 63, 69 (emphasis added). Auburn did not, does not (and cannot) allege that IBM had the requisite "specific intent" to induce infringement, and Auburn did not, does not (and cannot) allege that IBM knew or should have known that any particular activity would cause direct infringement. Auburn does not even identify any direct infringer that IBM has induced. Auburn's Amended Complaint fails to explain in any way how IBM induces infringement of the Auburn patents.

Auburn's most recent Court-ordered infringement contentions[5] confirm that, despite two years of intensive fact discovery regarding IBM's activities, Auburn has failed to identify ***any***

---

[5] As Auburn's Amended Complaint is deficient on its face, it is not necessary for the Court to consider Auburn's infringement contentions in order to grant this motion. The infringement contentions, however, provide insight into the appropriate understanding of the allegations in the Amended Complaint. "In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its

- 9 -

action taken by IBM to induce *any* other party to infringe the asserted Auburn patents.  Once again, in its July 2011 infringement contentions, Auburn has not identified *any* evidence that IBM has induced infringement.

Having failed to even specify the methods for which IBM allegedly induced infringement by others, Auburn's Amended Complaint cannot plausibly allege that IBM has induced infringement with specific intent.  *See, e.g., Halton Co. v. Streivor, Inc.*, No. C 10-00655, 2010 U.S. Dist. LEXIS 50649, *3-7 (N.D. Cal. May 21, 2010) (granting motion to dismiss where plaintiff failed to identify the act of direct infringement and failed to allege that defendant specifically intended to encourage another's infringement).  Where a cause of action requires intent to be pled, the Supreme Court has made it clear that the complaint must include "factual allegation[s] sufficient to plausibly suggest [the other party's] state of mind." *Iqbal*, 129 S. Ct. at 1952.  Auburn's Amended Complaint wholly fails in this regard.

The Court should enter judgment for IBM on Auburn's indirect infringement claim purportedly based on active inducement of infringement.

### 2. Contributory Infringement

A claim for contributory infringement also requires more than merely selling a product or providing a service to another who uses that product or service to directly infringe a patent.  *See* 35 U.S.C. § 271(c).  Instead, contributory infringement requires the sale of "a component especially designed for use in a patented invention" that "is not a staple article of commerce suitable for substantial noninfringing use."  *Ricoh Co. Ltd. v. Quanta Computer Inc.*, 550 F.3d

---

(continued…)

authenticity is not challenged." *Speaker v. U.S. Dep't of Health & Human Svcs.*, 623 F.3d 1371, 1379 (11th Cir. 2010) (quoting *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010)).  Because Auburn's infringement contentions are central to its claims for patent infringement against IBM and there is no dispute as to their authenticity, the Court may consider the infringement contentions without converting this motion into a motion for summary judgment.

1325, 1337 (Fed. Cir. 2008), *cert. denied*, 129 S. Ct. 2864 (2009). "[T]here can be no contributory infringement in the absence of direct infringement." *See Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341-42 (1961).

Auburn's purported claim for contributory infringement against IBM suffers from many of the same deficiencies as its claim for inducement. In support of its contributory infringement claim, Auburn states in its Amended Complaint:

> Upon information and belief, IBM has directly infringed, **contributed to** and/or actively induced infringement of the ['366 / '306] patent and is continuing to directly infringe, **contribute to** and/or actively induce infringement by making, using, importing, offering for sale, soliciting sales by others, enabling or assisting with sales by others of, and/or selling within the United States products, including, without limitation, integrated circuits tested using the claimed methods, which is covered by one or more claims of the ['366 / '306] patent.

Amended Complaint at ¶¶ 63, 69 (emphasis added). Yet again, Auburn fails to identify any specific "products and services" provided by IBM that are the basis for the contributory infringement claim. Nor does Auburn allege that any such unidentified IBM products and services were especially designed to be used in infringing the Auburn patents, and that such unidentified IBM products and services are not staples of commerce with substantial noninfringing uses. Accordingly, it is impossible to determine from Auburn's Amended Complaint – including when read in conjunction with its Court-ordered infringement contentions – what direct patent infringement allegedly serves as the basis for the allegations of contributory infringement. Auburn's contributory infringement claims against IBM amount to little more than conclusory recitations of the pertinent portion of the patent statute.[6]

---

[6] 35 U.S.C. § 271(c) states: "Whoever offers or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially

- 11 -

Auburn's Amended Complaint cannot plausibly allege that IBM's actions constitute contributory infringement because it fundamentally fails to even specify who directly infringes or which IBM products and services are especially designed and allegedly provided as material elements in some unidentified infringing combination. *See, e.g.*, *Tech. Licensing Corp. v. Technicolor USA, Inc.*, 2010 WL 4070208, at * 3 (E.D. Cal. Oct. 18, 2010) (granting Rule 12(c) motion where plaintiff's indirect infringement claim failed to allege third-party direct infringement, defendant's knowledge of a combination's infringement, or a lack of substantial non-infringing uses). A complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Auburn's Amended Complaint here fails to provide anything more than labels and conclusions in support of its claim for contributory infringement against IBM.

The Court should enter judgment for IBM on Auburn's indirect infringement claim purportedly based on contributory infringement.

### C. Auburn Has Failed To State A Claim For Infringement Under The Doctrine Of Equivalents.

The doctrine of equivalents may apply when a patent claim is not literally infringed, but the alleged infringer has made only "insubstantial changes and substitutions . . . which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of law." *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 607 (1950). The accused subject matter must still contain each limitation of the claim or its equivalent. *AquaTex Indus., Inc. v. Techniche Solutions*, 419 F.3d 1374, 1382 (Fed. Cir. 2005) (citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997)). To determine

---

(continued…)

made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."

whether an element in the accused subject matter is equivalent to a claim limitation, the court looks to whether the differences between the two are insubstantial, often focusing on whether the element "performs substantially the same function in substantially the same way to obtain the same result" as compared to the claim limitation. *Id.* (quoting *Graver Tank*, 339 U.S. at 608).

Infringement under the doctrine of equivalents is a distinct theory from literal infringement of the claims, and should be separately included in a pleading. *See Automated Transaction Corp. v. Bill Me Later, Inc.*, 2010 WL 1882264, at *2 (S.D. Fla. May 11, 2010) (citing *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007) and *Boss Control, Inc. v. Bombardier, Inc.*, 410 F.3d 1372, 1380 (Fed. Cir. 2005)). In *Automated Transaction*, for example, it was unclear from the face of the complaint whether the plaintiff alleged literal infringement, infringement under the doctrine of equivalents, or both. *Id.* The court applied the standards set forth in *Twombly* and *Iqbal* and analyzed Federal Circuit caselaw to determine that the pleading was insufficient; both theories should be set forth in a pleading "to properly inform the alleged infringer of what it must defend." *Id.*; *see also Boss Control*, 410 F.3d at 1380 (holding that the issue of infringement under the doctrine of equivalents was waived where the plaintiff did not address the argument in its complaint or briefing on summary judgment).[7]

---

[7] Other district courts, citing the Federal Circuit's decision in *McZeal*, have held that a patent infringement complaint that complies with Form 18 (formerly Form 16) and Rule 84 of the Federal Rules of Civil Procedure may be sufficient. *See, e.g.*, *Eon Corp. IP Holdings LLC v. Flo TV Inc.*, 2011 WL 2708945, at *2-3 (D. Del. July 12, 2011). But the complaint in *McZeal* was brought by a *pro se* litigant, and, unlike Auburn, the plaintiff in *McZeal* expressly alleged infringement under the doctrine of equivalents. *McZeal*, 501 F.3d at 1357. Furthermore, as pointed out by Judge Dyk's dissenting opinion, Form 18 does not address the doctrine of equivalents on its face and the form "should not be read as applying to a complex doctrine of equivalents claim." *McZeal*, 501 F.3d at 1361 (Dyk, J., dissenting). *McZeal* was also decided before the United States Supreme Court's decision in *Iqbal*, and the Federal Circuit has since recognized that Form 18 has not been updated since *Iqbal*. *Colida v. Nokia, Inc.*, 347 F. App'x 568, 571 n.2 (Fed. Cir. 2009). After *Iqbal*, and consistent with Judge Dyk's opinion in *McZeal*, even if Form 18 is considered, its applicability should be limited to claims for direct, literal patent infringement. *See W.L. Gore & Assocs., Inc. v. Medtronic, Inc.*, 2011 WL 1541312, at *6-7 (E.D. Va. Apr. 20, 2011) (noting the difficulty in reconciling Form 18 with *Twombly* and *Iqbal*, and questioning in dicta whether Form 18 applies to a doctrine of equivalents claim).

As in *Automated Transaction*, Auburn's Amended Complaint sets out boilerplate allegations of patent infringement but makes no mention whatsoever of infringement under the doctrine of equivalents. Auburn's subsequent Court-ordered infringement contentions provide no additional allegations or information, and merely "reserve" the right to assert infringement under the doctrine of equivalents "should IBM contend that it does not literally perform one or more elements" of the asserted claims or "based on further case investigation and discovery." (*See* Exhibit A at 3; Exhibit B at 9, 11; Exhibit C at 4, 7.) Auburn's "reservations" of rights are insufficient under *Twombly* and *Iqbal*, especially given that IBM has denied any infringement of any type since at least September 2009; indeed, IBM has provided Auburn with detailed non-infringement contentions in response to Auburn's discovery requests explaining why IBM contends it does not infringe. Nonetheless, to this day, Auburn has failed to specify whether it intends to assert the doctrine of equivalents at all.

Auburn's Amended Complaint thus cannot plausibly allege that IBM infringes under the doctrine of equivalents. Auburn had ample notice that IBM contends it does not infringe the Auburn patents literally, and Auburn has had multiple opportunities over the two-year pendency of this case to plead and disclose to IBM any legitimate allegations regarding the doctrine of equivalents. Auburn failed to do so.

The Court should enter judgment for IBM on Auburn's doctrine of equivalents claim.

## IV.   CONCLUSION

The Court should grant IBM's motion for judgment on the pleadings, dismissing with prejudice and in their entirety Auburn's claims of indirect infringement and for infringement under the doctrine of equivalents. The time for Auburn to amend its pleadings has long since passed, and permitting Auburn to maintain "placeholder" alternative infringement claims that have been inadequately pleaded at this late date is prejudicial to IBM.

DATED this 5th day of August, 2011

                    Respectfully submitted,

                    */s/ John A. Marlott*
                    Mike Brock
                    Alabama State Bar No. 5280-b61r
                    mbrock@cov.com
                    F. Chadwick Morriss
                    Alabama State Bar No. 8504-s75f
                    cmorriss@cov.com
                    COVINGTON & BURLING LLP
                    1201 Pennsylvania Avenue, NW
                    Washington, DC 20004-2401
                    Telephone:  202-662-6000
                    Facsimile: 202-662-6291

                    Kenneth R. Adamo (admitted *pro hac vice*)
                    Illinois State Bar No. 0010405
                    kradamo@kirkland.com
                    KIRKLAND & ELLIS LLP
                    300 N. La Salle Dr.
                    Chicago, Illinois 60654-3406
                    Telephone:  312-862-2671
                    Facsimile:  312-862-2200

                    John A. Marlott (admitted *pro hac vice*)
                    Illinois State Bar No. 6230613
                    jamarlott@jonesday.com
                    Brent P. Ray (admitted *pro hac vice*)
                    Illinois State Bar No. 6291911
                    bpray@jonesday.com
                    Ryan M. Hubbard (admitted *pro hac vice*)
                    Illinois State Bar No. 6296777
                    rmhubbard@jonesday.com
                    JONES DAY
                    77 West Wacker Drive
                    Chicago, Illinois  60601-1692
                    Telephone:  312-782-3939
                    Facsimile:  312-782-8585

                    *Attorneys for Defendant,*
                    *IBM Corporation*

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 5, 2011, I filed the foregoing with the Court's CM/ECF system, causing this filing to be served electronically on all parties registered with the Court's electronic filing system.

                                                 */s/ Ryan M. Hubbard*_____
                                                 Attorney for Defendant IBM Corporation

CHI-1812717